**Opinion filed January 20, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00337-CV

_____

## IN THE INTEREST OF D.O., S.O., AND M.L.O., CHILDREN

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CV 08-05-155**

### O P I N I O N

M.O.W. and C.D.O. appeal the trial court's order terminating their parental rights to their three children, D.O., S.O., and M.L.O.[1] We affirm.

*Background Facts*

D.O. is fourteen years old; S.O. is thirteen years old; and M.L.O. is ten years old. In May 2008, they lived with M.O.W. At that time, C.D.O. was incarcerated. On May 8, 2008, M.O.W. was arrested for possession of methamphetamine. On May 9, 2008, the Texas Department of Family and Protective Services removed the children from M.O.W.'s care. On the same day, the Department filed a Petition for Protection of a Child, for Conservatorship, and for Termination in

---

[1]Pursuant to Rule 9.8 of the Texas Rules of Appellate Procedure, we use aliases to refer to the minors and the minors' parents. TEX. R. APP. P. 9.8(b)(2).

Suit Affecting the Parent-Child Relationship. In its petition, the Department sought termination of M.O.W.'s and C.D.O.'s parental rights based on a number of statutory grounds. The trial court entered an order naming the Department as temporary sole managing conservator of the children. The children were placed in foster care. The children's maternal grandmother, R.K., intervened in the suit. She sought to be appointed as the permanent managing conservator of the children.

The case proceeded to a jury trial. The trial court instructed the jury on three alleged statutory grounds for termination of M.O.W.'s and C.D.O.'s parental rights. The jury found by clear and convincing evidence that the parental rights of M.O.W. and C.D.O. should be terminated and that such termination was in the best interest of the children. The jury also found that the Department should be appointed as managing conservator of the children.

In accordance with the jury's verdict, the trial court entered an order terminating M.O.W.'s and C.D.O.'s parental rights to D.O., S.O., and M.L.O. In its order, the trial court found by clear and convincing evidence that termination of M.O.W.'s and C.D.O.'s parental rights was in the best interest of the children and that M.O.W. and C.D.O. had:

> [1] knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;
>
> [2] engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children; and
>
> [3] failed to comply with the provisions of a court order that specifically established the actions necessary for the [parent] to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children.

In its order, the trial court appointed the Department as the children's permanent managing conservator. M.O.W. and C.D.O. have filed this appeal from the trial court's order. R.K. has not filed an appeal.

*Issues on Appeal*

M.O.W. brings six issues on appeal, and C.D.O. brings four issues on appeal. In M.O.W.'s first two issues, she contends that the evidence is legally and factually insufficient to

support the jury's finding that termination of her parental rights is in the children's best interest. In her third and fourth issues, she contends that the evidence is legally and factually insufficient to support the jury's finding that the Department should be named as the managing conservator of the children. In her fifth issue, she contends that the trial court erred by admitting evidence that one of the children placed a swastika on his book. In her sixth issue, she argues that the trial court erred by failing to submit her requested jury instruction to the jury. In C.D.O.'s issues, he contends that the evidence is legally and factually insufficient to support the jury's finding that termination of his parental rights is in the children's best interest.

*Sufficiency of the Evidence*

Due process requires that the grounds for termination be established by clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This requires a measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (Vernon 2008); *In re J.P.H.*, 196 S.W.3d 289, 292 (Tex. App.—Eastland 2006, no pet.). When conducting a legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266; *In re J.P.H.*, 196 S.W.3d at 292. We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *In re J.F.C.*, 96 S.W.3d at 266.

When conducting a factual sufficiency review, we review the record as a whole, including evidence in support of and contrary to the judgment, and give due consideration to evidence that the trier of fact could have found to be clear and convincing. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *In re J.P.H.*, 196 S.W.3d at 292-93. We then determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re C.H.*, 89 S.W.3d at 25; *In re J.P.H.*, 196 S.W.3d at 293. We also consider whether any disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266; *In re J.P.H.*, 196 S.W.3d at 293.

To terminate parental rights, the Department must prove that one statutory ground for termination has occurred and that termination is in the best interest of the child. *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). One ground for termination is that a parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(E) (Vernon Supp. 2010). "Endanger" means to expose to loss or injury or to jeopardize a child's emotional or physical health. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *Phillips v. Tex. Dep't of Protective & Regulatory Servs.*, 149 S.W.3d 814, 817 (Tex. App.—Eastland 2004, no pet.); *Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied). The conduct must be more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment. However, it is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Doyle*, 16 S.W.3d at 394.

The cause of danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions but also by the parent's omissions or failures to act. *Doyle*, 16 S.W.3d at 395; *In re S.H.A.*, 728 S.W.2d 73, 85 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). Termination must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re J.W.*, 152 S.W.3d 200, 205 (Tex. App.—Dallas 2004, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). Imprisonment is a factor to consider on the issue of endangerment. *Boyd*, 727 S.W.2d at 533. However, imprisonment by itself is not enough to constitute engaging in conduct that endangers the emotional or physical well-being of the child. *Id.* at 533-34; *In re M.D.S.*, 1 S.W.3d 190, 199 (Tex. App.—Amarillo 1999, no pet.). On the other hand, if the evidence, which includes imprisonment, shows a course of conduct that has the effect of endangering the physical or emotional well-being of the child, a finding of endangerment is supportable. *Boyd*, 727 S.W.2d at 533-34; *In re M.D.S.*, 1 S.W.3d at 199. Evidence that a parent has engaged in a pattern of illegal drug use and drug-related criminal activity supports the conclusion that the children's surroundings endanger their physical or emotional well-being. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). A parent's abuse of the other parent or children can support a finding of endangerment. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009); *In re C.A.B.*, 289 S.W.3d 874, 886 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Conduct

that subjects a child to a life of uncertainty and instability may endanger the physical and emotional well-being of a child. *In re A.J.H.*, 205 S.W.3d 79, 81 (Tex. App.—Fort Worth 2006, no pet.).

The record shows that the Department has conducted numerous investigations of M.O.W. and C.D.O. over the years. M.O.W. and C.D.O. were married in 1996. Between 1996 and 2005, they were arrested a number of times. M.O.W. testified that she was arrested for "hot checks." In 2000, C.D.O. was arrested for burglary. In 2002 or 2003, C.D.O. was placed on probation for an aggravated assault offense. C.D.O. testified that he started using methamphetamine in the early to middle part of 2004. In 2005, he was sent to the Substance Abuse Felony Treatment Facility as a condition of probation. He got out of the SAFTF in July 2005. C.D.O. started using methamphetamine again about a year later. M.O.W. testified that she started using methamphetamine in late 2006 or 2007. She said that, "[w]hen [she] did drugs, [she] was an IV drug user." C.D.O. testified that he actively used methamphetamine from November 2006 to June 2007.

M.O.W. testified that C.D.O. physically abused her three or four times after he returned from SAFTF. She said that the worst instance of abuse occurred during late 2006 when C.D.O. choked her until she passed out. The Department presented evidence that the children had seen their parents fight and that the fighting had scared the children. M.O.W. and C.D.O. separated in June 2007. Also in June 2007, M.O.W. admitted to the Department that she had been using drugs, and she tested positive for methamphetamine. At that time, M.O.W. agreed to voluntary placement of the children with her mother.

M.O.W. met Jerry W. in early 2007. They started living together in July or August 2007. M.O.W. testified that she knew Jerry was a convicted felon and had been a drug dealer in the past. C.D.O. testified that he knew Jerry was a drug dealer. In September 2007, the children were returned to M.O.W.'s care, and they lived with M.O.W. and Jerry. In December 2007, M.O.W. and C.D.O. were divorced.

Tony Aaron, a captain with the Brown County Sheriff's Office, testified that M.O.W. had been booked into the Brown County jail twelve times since the fall of 2007. Captain Aaron said that he received information that M.O.W. and Jerry were involved in trafficking drugs from Waco to the Brown County area. In March 2008, M.O.W., Jerry, and three others were arrested for theft of copper wire. On the same occasion, the police found methamphetamine in Jerry's

5

pocket. He was arrested for possession of methamphetamine. Jerry had been incarcerated since the date of that arrest. He pleaded guilty to the theft offense and received a sentence of nine years confinement. After Jerry's incarceration, M.O.W. and Jerry were married by proxy.

In March 2008, C.D.O. was arrested, and his community supervision on the aggravated assault offense was later revoked. He received a five-year sentence on the offense. C.D.O. said that he had been incarcerated since his March 2008 arrest and that he had not seen his children since being incarcerated.

On May 8, 2008, M.O.W. was driving her vehicle in Brownwood. The police stopped her and found 3.3 grams of methamphetamine in the vehicle. She was charged with a second degree felony offense of possession with intent to deliver methamphetamine. M.O.W. was alone in the vehicle at the time of the stop. She had left the children in the care of a registered sex offender and his wife. The Department removed the children from M.O.W.'s care and placed them with C.D.O.'s parents. Later, the children were placed in foster care, and they remained in foster care through trial.

Based on information that Captain Aaron received about M.O.W., the police had stopped her about a week before her May 8, 2008 arrest. During this earlier stop, the police had not found any drugs in her vehicle. After the May 8, 2008 arrest, M.O.W. became a confidential informant. M.O.W. told Captain Aaron that she had attempted to obtain narcotics in Waco before the earlier stop of her vehicle but that the drugs had not been available at that time.

In November 2008, the police executed a search warrant at M.O.W.'s house. The officers seized methamphetamine during the search. The officers also found a recipe for manufacturing methamphetamine. When the officers arrived at the house, M.O.W. and Stacy Hull were on the bed in the master bedroom. Hull had been convicted of a number of drug offenses. M.O.W. was arrested for possession of methamphetamine in connection with the November 2008 incident.

In April 2009, M.O.W. admitted to the Department that she had used drugs and had been a drug dealer until October 2008. M.O.W. tested positive on numerous drug tests in 2008. In April 2009, M.O.W. pleaded guilty to the May 2008 offense of possession with intent to deliver methamphetamine. As part of the plea agreement, the State agreed to take into consideration and dismiss the March 2008 theft charge and to take into consideration the unfiled drug offense that M.O.W. allegedly committed in November 2008. Pursuant to the plea agreement, M.O.W. was

placed on deferred adjudication community supervision for ten years. M.O.W. testified that she spent thirty days in jail as a condition of her community supervision.

In August 2009, M.O.W. tested positive for methamphetamine on a drug test. She admitted to her probation officer that she had used methamphetamine. M.O.W. was arrested, and on August 19, 2009, the State filed a motion to adjudicate M.O.W.'s guilt. This motion was pending at the time of trial.

The Department presented evidence that the children were aware of M.O.W.'s drug use. The children talked with their counselor, Lynn Sharpin, about M.O.W.'s use of drugs. Sharpin testified that M.O.W.'s drug use had been a "roller coaster ride for them" and had damaged their emotional health. Sharpin said that the children "broke down and started crying" after M.O.W.'s relapse in August 2009. S.O. told Joe M. Jeffers, a psychologist, that he had been taken out of M.O.W.'s home because "she uses meth." M.L.O. told Jeffers that she had been taken by the Department "[b]ecause my mom and dad are drug dealers."

M.O.W. lived with R.K. until the month before trial. R.K. testified that M.O.W. moved out to give R.K. a chance of obtaining custody of the children. M.O.W. moved into a house that was close to R.K.'s house. R.K. said that she was not aware of M.O.W.'s drug use until about six weeks before trial. The Department had a concern that, if the children were placed in R.K.'s care, M.O.W. would have regular access to them.

The Department presented detailed evidence that M.O.W.'s and C.D.O.'s conduct had adversely affected the children's emotional well-being and that the children had thrived since being placed into foster care. Sharpin testified that the children liked the stability, consistency, and structure of their foster care.

These facts are sufficient to allow a reasonable juror to form a firm belief or conviction (1) that M.O.W. and C.D.O. engaged in conduct that endangered the physical or emotional well-being of D.O., S.O., and M.L.O and (2) that termination of M.O.W.'s and C.D.O.'s parental rights is in the best interest of the children. As summarized above, the evidence showed that M.O.W. and C.D.O. both engaged in a pattern of extensive drug abuse and related criminal activities that endangered the physical or emotional well-being of the children. Because the evidence supports termination under Section 161.001(1)(E) of the Texas Family Code, we need not discuss the remaining statutory findings. We conclude that the evidence is legally and factually sufficient to support the jury's findings on the termination of M.O.W.'s and C.D.O.'s

parental rights and on the appointment of the Department, and not R.K., as the managing conservator of the children. M.O.W.'s first four issues and C.D.O.'s issues are overruled.

*Evidentiary Issue*

In her fifth issue, M.O.W. contends that the trial court erred in admitting testimony from S.O.'s foster mother, Theresa Livesay, that S.O. placed a swastika on one of his textbooks. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005); *Allen v. Mancini*, 170 S.W.3d 167, 172 (Tex. App.—Eastland 2005, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

At trial, M.O.W. argued that the swastika evidence was not relevant to the issues to be decided by the jury and that, even if the evidence was relevant, its probative value was outweighed by its prejudicial effect. M.O.W. asserted that the State sought to introduce the evidence solely for the purpose of prejudicing the jury against her and C.D.O. The trial court overruled M.O.W.'s objection, and Livesay testified that S.O. had a "Nazi symbol" on one of his books.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable." TEX. R. EVID. 401. As stated above, the Department had to prove that at least one statutory ground for termination occurred and that termination was in the best interest of the children. *In re J.L.*, 163 S.W.3d at 84; *In re A.V.*, 113 S.W.3d at 362. Therefore, any evidence that M.O.W. engaged in conduct constituting a ground for termination or that related to the best interest of the children is relevant. *Murray v. Tex. Dep't of Family & Protective Servs.*, 294 S.W.3d 360, 368 (Tex. App.—Austin 2009, no pet.). The fact that S.O. placed a "Nazi symbol" on his book is relevant to determining whether M.O.W. endangered S.O.'s physical or emotional well-being and also to evaluating S.O.'s best interest.

Relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Murray*, 294 S.W.3d at 368; *In re K.Y.*, 273 S.W.3d 703, 710 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Excluding evidence under Rule 403 is an

8

extraordinary remedy that must be used sparingly. *Murray*, 294 S.W.3d at 368; *LSR Joint Venture No. 2 v. Callewart*, 837 S.W.2d 693, 698 (Tex. App.—Dallas 1992, writ denied). M.O.W. has not demonstrated, and the record does not show, that the admission of the "Nazi symbol" evidence unfairly prejudiced her. The trial court did not abuse its discretion in admitting the evidence.

Additionally, to be entitled to reversal due to the erroneous admission of evidence, an appellant must show that the error probably resulted in an improper judgment. TEX. R. APP. P. 44.1; *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). In conducting a harm analysis, we review the entire record and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *In re C.R.*, 263 S.W.3d 368, 370 (Tex. App.—Dallas 2008, no pet.). In this case, the questioning of Livesay about the "Nazi symbol" was very brief. Having reviewed the entire record, we find that, if the trial court did err in allowing the evidence, the error was harmless. M.O.W.'s fifth issue is overruled.

### Jury Charge Issue

In her sixth issue, M.O.W. contends that the trial court erred by failing to submit the following jury instruction:

> Before you can find that it is in the best interest of the child that a parent's rights be terminated, you must find by clear and convincing evidence that it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator.

We review a trial court's decision to submit or refuse a particular jury instruction under an abuse of discretion standard. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). When submitting a jury charge, the trial court is afforded more discretion when submitting instructions than when submitting questions. *In re A.R.*, 236 S.W.3d 460, 478 (Tex. App.—Dallas 2007, no pet.). To be proper, an instruction must (1) assist the jury, (2) accurately state the law, and (3) find support in the pleadings and the evidence. *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000). The omission of an instruction is reversible error only if the omission probably caused the rendition of an improper judgment. *Shupe*, 192 S.W.3d at 579.

9

M.O.W. relies on Section 263.404 of the Family Code to support her contention that the trial court should have submitted her requested instruction. TEX. FAM. CODE ANN. § 263.404 (Vernon 2008) is titled "Final Order Appointing Department as Managing Conservator Without Terminating Parental Rights." Section 263.404(a) provides as follows:

> (a) The court may render a final order appointing the department as managing conservator of the child without terminating the rights of the parent of the child if the court finds that:
>
> (1) appointment of a parent as managing conservator would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development; and
>
> (2) it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator.

M.O.W. asserts that, by enacting Section 263.404, "[t]he Texas Legislature has determined that it is the policy of the State of Texas to seek a relative placement of the child as a priority to termination of the parental rights and as a priority to naming the Department as managing conservator."

By its plain language, Section 263.404 only applies when the trial court does not order termination of parental rights. *In re J.A.J.*, 243 S.W.3d 611, 615 (Tex. 2007). It does not apply when the trial court terminates parental rights. The language in Section 263.404 does not address the issue of whether a priority exists between seeking placement of the child with a relative and terminating parental rights. Nothing in Section 263.404 supports the proposition stated by M.O.W. in her requested jury instruction. M.O.W.'s requested instruction did not accurately state the law. We conclude that the trial court did not abuse its discretion by refusing to submit M.O.W.'s requested jury instruction.

However, even if the trial court erred by denying M.O.W.'s requested instruction, we conclude that M.O.W. was not harmed. By its answers to Question Nos. 3, 4, and 5, the jury necessarily found that it was not in the best interest of the children that R.K. be appointed as their managing conservator. M.O.W.'s sixth issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


January 20, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.