**Opinion filed November 3, 2011**



### In The

# Eleventh Court of Appeals

_____

### No. 11-10-00331-CV

_____

### IN THE INTEREST OF A.M.M., A.N.M., E.J.M.,
### A.E.E., AND B.T., CHILDREN

**On Appeal from the 90th District Court**

**Stephens County, Texas**

**Trial Court Cause No. 29,910**

### M E M O R A N D U M   O P I N I O N

John appeals from the trial court's order terminating his parental rights to A.M.M., A.N.M., and E.J.M. On appeal, John challenges the legal and factual sufficiency of the evidence supporting the termination of his parental rights. We affirm.

*Background*

Cynthia and John are the parents of A.M.M., A.N.M., and E.J.M. At the time of trial, A.M.M. was ten years old, A.N.M. was nine years old, and E.J.M. was seven years old. Cynthia and Johann are the parents of A.E.E., who was four years old at the time of trial. Cynthia and Ben are the parents of B.T., who was one year old at the time of trial. In this case, the Texas Department of Family and Protective Services sought termination of (1) Cynthia's parental rights to all five children; (2) John's parental rights to A.M.M., A.N.M., and E.J.M.; (3) Johann's parental rights to A.E.E.; and (4) Ben's parental rights to B.T. Following a bench trial, the trial

court entered an order terminating John's parental rights to A.M.M., A.N.M., and E.J.M. In the order, the trial court found by clear and convincing evidence that termination of John's parental rights was in the best interest of the children and that John had:

> [1] knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children; [and]

> [2] engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children.

In the order, the trial court also terminated Johann's parental rights to A.E.E. The trial court concluded that termination of Cynthia's parental rights to the children was not in the children's best interest and that termination of Ben's parental rights to B.T. was not in B.T.'s best interest. Therefore, the trial court did not terminate Cynthia's parental rights to her children or Ben's parental rights to B.T.

In the order, the trial court appointed the Department as the permanent managing conservator of all five children. The trial court appointed Cynthia as a permanent possessory conservator of the children and Ben as a permanent possessory conservator of B.T. The trial court's order allows Cynthia and Ben to have access to the children through visits supervised by the Department.

John has filed this appeal from the trial court's order terminating his parental rights. No other party has appealed from the trial court's order.

*Issues on Appeal*

John presents three issues for review. In his issues, he challenges the legal and factual sufficiency of the evidence supporting the trial court's findings (1) that he knowingly placed or knowingly allowed the children to remain in conditions that endangered the physical or emotional well-being of the children, (2) that he engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children, and (3) that termination of his parental rights was in the children's best interest.

*Sufficiency of the Evidence*

Due process requires that the grounds for termination be established by clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This requires a measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2008); *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). When conducting a legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266; *In re J.P.H.*, 196 S.W.3d 289, 292 (Tex. App.—Eastland 2006, no pet.). We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *In re J.F.C.*, 96 S.W.3d at 266.

When conducting a factual sufficiency review, we review the record as a whole, including evidence in support of and contrary to the judgment, and give due consideration to evidence that the trier of fact could have found to be clear and convincing. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *In re J.P.H.*, 196 S.W.3d at 292–93. We then determine whether the evidence is such that the factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re C.H.*, 89 S.W.3d at 25; *In re J.P.H.*, 196 S.W.3d at 293. We also consider whether any disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266; *In re J.P.H.*, 196 S.W.3d at 293.

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts or omissions listed in Section 161.001(1)(A–T) and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2010); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found that John violated Section 161.001(1)(D) and (E). Specifically, the trial court found (1) that John knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children (Section 161.001(1)(D)) and (2) that John engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children (Section 161.001(1)(E)).

3

We begin our analysis by considering the trial court's finding that John violated Section 161.001(1)(E). To terminate a parent-child relationship based on Section 161.001(1)(E), the trial court must find by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *See* Section 161.001(1)(E). "Endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.O.*, 338 S.W.3d at 34; *Phillips v. Tex. Dep't of Protective & Regulatory Servs.*, 149 S.W.3d 814, 817 (Tex. App.—Eastland 2004, no pet.). The conduct must be more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment. However, it is not necessary that the conduct be directed at the child or that the child actually suffers an injury. *In re D.O.*, 338 S.W.3d at 34; *Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet denied). The relevant inquiry is whether evidence exists that a parental course of conduct endangered the child's physical or emotional well-being. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 616-17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *In re R.D.*, 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997, pet. denied).

The cause of danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions but also by the parent's omissions and failures to act. *Doyle*, 16 S.W.3d at 395; *In re S.H.A.*, 728 S.W.2d 73, 85 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). Termination under Section 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.O.*, 338 S.W.3d at 34; *In re J.W.*, 152 S.W.3d 200, 205 (Tex. App.—Dallas 2004, pet. denied). The conduct need not occur in the presence of the child. *Walker*, 312 S.W.3d at 617. The conduct may occur before the child's birth and both before and after the child is removed by the Department. *Id.*

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied); *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). Imprisonment of the parent is a factor to consider on the issue of endangerment. *Boyd*, 727 S.W.2d at 533; *In re D.O.*, 338 S.W.3d at 34. However, imprisonment by itself is not enough to constitute engaging in conduct that endangers the emotional or physical well-being of the child. *Boyd*, 727 S.W.2d at 533-34; *In re D.O.*, 338 S.W.3d at 34. On the other hand, if the evidence, which includes imprisonment, shows a course

4

of conduct that has the effect of endangering the physical or emotional well-being of the child, a finding of endangerment is supportable. *Boyd*, 727 S.W.2d 533-34; *In re D.O.*, 338 S.W.3d at 34. Conduct that routinely subjects a child to the probability that the child will be left alone because a parent is jailed endangers both the physical and emotional well-being of the child. *Walker*, 312 S.W.3d at 617. Also, evidence of narcotics use and its effect on a parent's life and ability to parent may establish that the parent has engaged in an endangering course of conduct. *Id.* at 618. Because the use of illegal drugs by a parent exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under Section 161.001(1)(E). *Id.* at 617; *In re R.W.*, 129 S.W.3d at 739. Additionally, abusive or violent conduct by a parent may produce an environment that endangers the physical or emotional well-being of the child. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Thus, a parent's abuse of the other parent or children can support a finding of endangerment under Section 161.001(1)(E). *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009); *In re D.O.*, 338 S.W.3d at 34.

Cynthia met John when she was twelve years old. They began a relationship, and Cynthia gave birth to A.M.M. when she was fourteen years old. At that time, John was sixteen years old. Cynthia and John lived with her parents at times, and they lived with John's parents at other times. Cynthia gave birth to A.N.M. when she was fifteen years old and to E.J.M when she was seventeen years old. Cynthia and John both dropped out of school.

Cynthia and John were in a relationship from 1999 until 2005. Cynthia testified that, during their relationship, John verbally and physically abused her. She said that John hit her with his fist. She said that, in 2003, John stabbed her with a knife. Cynthia testified that the stabbing left her with a permanent scar. She described John's physical abuse of her as ongoing conduct that happened repeatedly over a period of years. Cynthia said that John abused her because he was "insanely jealous." Cynthia testified that John never hit her in front of the children. Cynthia's sister, Dominga Baggett, testified that she was aware that John physically abused Cynthia. Dominga saw physical altercations between Cynthia and John. Dominga said that Cynthia and John engaged in fistfights and that the children were present when some of the fights began. Dominga said that she took the children out of the house on occasions when John and Cynthia were fighting. A.M.M. told Brandi Sattarphai, the Department's caseworker, that "[John] used to hurt [Cynthia]." John testified that he verbally abused Cynthia but that he never physically abused her.

Cynthia said that John used methamphetamine, cocaine, and marihuana during their relationship. She said that he did not use drugs at home but that he used them when he was "out running the streets." John testified that he used cocaine and methamphetamine intravenously during his relationship with Cynthia. He said that he used these drugs when he went off on weekend drug binges that lasted two or three days. John said that he participated in these weekend drug binges "[o]nce or twice every three to six months."

Cynthia testified that she left John in 2005 "because he was abusive and he wouldn't change his lifestyle." John testified that his methamphetamine abuse got really bad in 2006 after his mother died. He said that, at that time, his drug binging increased to every other weekend. John said that he had not used drugs since June 2007.

The Department presented evidence that John continued to engage in a pattern of abuse of women after his relationship with Cynthia ended. Two of John's subsequent girlfriends, Jennifer Perez and Pricilla Moreno, obtained protective orders against him. John said that Perez obtained the order to prevent him from harassing her and committing acts of violence against her. Moreno obtained the protective order based on allegations that John had threatened to hit her. On two occasions in 2007, John violated the protective order that Perez had obtained. John pleaded guilty to violating Perez's protective order in both cases. In each case, the court convicted John of the offense and sentenced him to forty-five days confinement in the county jail. On April 12, 2010, John pleaded guilty to the third degree felony offense of stalking. The victim in the stalking case was Moreno. The judgment of conviction identifies the date of the offense as May 30, 2009, through June 27, 2009. John was sentenced to confinement for four years for the stalking offense. During his testimony, John said that he and Moreno were back together.

John has a number of convictions in addition to those described above. In 2006, he pleaded guilty to driving while intoxicated in Eastland County. The court convicted him. He was placed on community supervision for one year, and his community supervision was later extended by six months. John moved to Amarillo in 2006. His community supervision was transferred to Potter County. Later, the State filed a motion to revoke John's community supervision in the Eastland County case, and ultimately, the court revoked his community supervision. In 2008, John pleaded guilty to a tampering-with-evidence offense in Potter County. The court deferred adjudication of guilt and placed John on community supervision for three years. On January 10, 2010, John was convicted of a failure-to-identify offense and sentenced to confinement for sixty days in the county jail. On February 9, 2010, John was

convicted of a theft offense and sentenced to confinement for sixty days in the county jail. On April 12, 2010, which was the date that John was convicted in the stalking case, the court adjudicated John's guilt on the tampering-with-evidence offense. The court sentenced John to confinement for four years and ordered that John's sentences for the stalking offense and the tampering-with-evidence offense run concurrently.

At the time of trial, John was serving his four-year sentences on his convictions for the stalking and tampering-with-evidence offenses. He testified that he had two years and eight months remaining on the sentences. He said that he had a mandatory release date for parole in June 2011. John testified that his incarceration for the stalking and tampering-with-evidence offenses was the only time that he had been in prison. He said that he had been in jail about ten times.

John had limited contact with his children after his relationship with Cynthia ended. Cynthia testified that John saw A.M.M., A.N.M., and E.J.M. for "a couple of hours" once every three or four months. John testified that he saw his children "[o]nce or twice every three months, maybe more." Cynthia has a history of methamphetamine abuse and an extensive criminal history. Cynthia testified that, at her request, John kept the children from February 2009 to March 2009 when "[she] was trying to get [herself] together." On that occasion, John kept the children for about a month. John testified that he returned the children to Cynthia because "[they] wanted to go back, and I had caught a warrant anyways." John testified that he had not seen his children since March 2009, which was about eighteen months before trial.

The Department removed A.M.M., A.N.M., and E.J.M. from Cynthia's care on April 1, 2009. All five children were placed with the same foster parents, and they remained in the care of the same foster parents at the time of trial. The Department presented detailed evidence that the children had a good relationship with their foster parents, that their foster parents were providing the children with a stable home, and that their foster parents were meeting the children's physical and emotional needs.

In this case, the trial court's function, as the trier of fact, was to judge the credibility of the witnesses, assign the weight to be given their testimony, and resolve any conflicts or inconsistencies in the testimony. *In re R.W.*, 129 S.W.3d at 742. The trial court was entitled to believe all, part, or none of the testimony of any witness. *In re T.N.*, 180 S.W.3d 376, 382–83 (Tex. App.—Amarillo 2005, no pet.). Based on the evidence, the trial court could have reasonably concluded that John engaged in a pattern of domestic violence against Cynthia; that John had a long history of intravenous cocaine and methamphetamine abuse; that John had an

7

extensive criminal history and numerous convictions, including recent convictions; that John had been incarcerated in county jails on a number of occasions; and that John was incarcerated in prison at the time of trial. These facts are sufficient to allow a reasonable trier of fact to form a firm belief or conviction that John engaged in a voluntary, deliberate, and conscious course of conduct that endangered the physical or emotional well-being of A.M.M., A.N.M., and E.J.M. Therefore, the evidence is legally and factually sufficient to support termination under Section 161.001(1)(E) of the Texas Family Code.

John's second issue on appeal is overruled. Because only one ground is needed to support a termination order, we need not address John's first issue challenging the sufficiency of the evidence to support the trial court's finding under Section 161.001(1)(D) of the Family Code.

The next question we must address is whether the best-interest finding is supported by legally and factually sufficient evidence. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.J.O.*, 325 S.W.3d at 266. A trier of fact may measure a parent's future conduct by his or her past conduct and determine that it is in the child's best interest to terminate parental rights. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

The evidence showed that A.M.M., A.N.M., and E.J.M. were removed from Cynthia's care on April 1, 2009. Since that date, the children had been living in the same foster home. Their foster parents had provided a stable environment for the children and had met the children's needs. The children had a good relationship with their foster parents. John had not exhibited adequate parenting abilities in the past. As summarized above, the Department presented evidence that John had engaged in a pattern of violence against Cynthia and that

John's pattern of violence against women continued after his relationship with Cynthia ended. John has a lengthy history of drug abuse and a lengthy criminal history. He has been in and out of jail. He was incarcerated at the time of trial. The evidence demonstrated that John could not provide A.M.M., A.N.M., and E.J.M. a stable home environment or meet their physical and emotional needs. Further, there was no evidence that John would be able to sustain a stable environment for the children or to meet the children's needs in the future. Considering the evidence relating to John's past conduct, the trial court could have reasonably concluded that he would not be able to provide the children with a stable environment or to meet their needs in the future.

Based on the evidence, the trial court could reasonably have formed a firm belief or conviction that termination of John's parental rights would be in the best interest of A.M.M., A.N.M., and E.J.M. We cannot hold that this finding is not supported by clear and convincing evidence. The evidence is legally and factually sufficient to support the finding that termination of John's parental rights is in the best interest of A.M.M., A.N.M., and E.J.M. John's third issue is overruled.

*This Court's Ruling*

We affirm the trial court's order terminating John's parental rights to A.M.M., A.N.M., and E.J.M.


TERRY McCALL
JUSTICE

November 3, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

9