**Opinion filed February 14, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00199-CV

_____

## IN THE INTEREST OF E.F., A CHILD

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 8444-CX**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and father of E.F. Both parents appeal. On appeal, each parent presents three issues challenging the sufficiency of the evidence to support the trial court's findings in support of termination. We affirm.

### *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational

trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b).

In this case, the trial court found that both parents had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found that the parents had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being; that the parents had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being; and that the parents had failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of each parent's parental rights would be in the best interest of the child. On appeal, neither parent challenges the best interest finding, but both parents challenge the findings made by the trial court pursuant to subsections (D), (E), and (O).

*Background Facts*

The record shows that the Department first became involved with the child, E.F., in 2016 when she was approximately nine months old. At that time, the Department received a report that the mother was using drugs. The Department investigated the report, and a family-based safety plan was put into place. As part of this FBSS plan, the child went to live with an aunt. The parents later moved in with the aunt too. Approximately three months after the FBSS plan had been put into place, and during a visit to the aunt's house, the FBSS caseworker asked the mother to take a drug test. The mother submitted to an instant drug screen and then admitted to the caseworker that she had used methamphetamine.

During a subsequent visit, additional concerns arose regarding the mother's continued illegal drug use, the father supplying the mother with drugs, the father's drinking problem, and the sale of drugs from the house in which the family was living. We note that the father was the person who informed the FBSS caseworker that drugs were being sold from the house. The FBSS caseworker was also concerned about the negligent care that the child was receiving. The child had eczema "all over her little body," and neither the aunt nor the parents had been applying medication as prescribed by the child's doctor for that condition. The child was removed at that time and placed in foster care.

The Department subsequently attempted two monitored returns, but both failed. The first monitored return ended after the mother called the conservatorship caseworker and reported that the father "was drunk" and "was breaking stuff." During the call, the caseworker could hear the father "yelling in the background," and the mother "sounded very fearful." E.F. was visiting the foster parents at the time, but a six-year-old child was in their home at the time. The day before this phone call, the caseworker had been to the family's home and found both parents to be under the influence of alcohol or drugs while caring for E.F. Both parents acted

"[v]ery erratic" during the visit. The home had a strong odor of alcohol; there were trash cans full of empty beer cans; and a can of beer was on the floor within E.F.'s reach. E.F. was two years old.

The second monitored return ended for similar reasons. One evening when the caseworker went to visit the home, the father was there with E.F. The father appeared to be "under the influence" based on his behavior and slurred speech. Again, the home smelled of alcohol. The father told the caseworker that the mother had been at a known drug house all day and that E.F. had also been at the drug house that day. The father also told the caseworker that he had taken E.F. to that house and, in E.F.'s presence, punched a man with whom he thought the mother was "cheating on him." The police were dispatched to a possible fight in progress about 3:00 p.m. that day. By the time police arrived, the father had left with E.F. Officer Courtney Bailey testified that the mother was angry, belligerent, and highly intoxicated and that the mother was arrested that day for public intoxication because she was a danger to herself and others.

Additionally, the parents failed to take E.F. to ECI (early childhood intervention) appointments and to daycare as they had agreed to do during the second monitored return. E.F. missed "more and more days" as the monitored return progressed.

The parents did not comply with all of the Department's requests that the parents submit to drug tests. Testimony indicated that the father continued to abuse alcohol on a regular basis and that the mother continued to abuse drugs. The director of E.F.'s daycare testified that she was concerned for the child's well-being based upon an incident in which the father had picked up E.F. from daycare. The father appeared to be "under the influence of something"; he was stumbling or tripping as he walked away with E.F. A neighbor also testified about her concerns for E.F.'s safety because the parents drink frequently and sometimes "smack" the child. The

4

neighbor had witnessed both parents "smack" the child in the face, on the arm, and on the top part of her leg. The neighbor also had a concern about domestic violence between the parents.

Evidence was also introduced regarding the Department's plans for E.F.; the improvement in her behavior, her speech, and her personality while with the foster parents as opposed to the parents; the foster parents' bond with and love for E.F.; and the child's best interest.

*Analysis*

In their second issue on appeal, each parent challenges the sufficiency of the evidence to support the finding made by the trial court pursuant to subsection (E) of Section 161.001(b)(1). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.*

Here, the record contains clear and convincing evidence that both parents had engaged in alcohol and/or drug use while the child was in their care—to a point that endangered the child—and that the parents continued to engage in that behavior while this case was pending. The trial court could reasonably have formed a firm belief or conviction that each parent's actions—a continued course of conduct that included the mother's methamphetamine use, domestic violence between the

5

parents, and both parents' abuse of alcohol—had endangered the child. The evidence supports the trial court's findings that the mother and the father endangered the child's physical or emotional well-being. Consequently, we hold that the evidence is legally and factually sufficient to support the trial court's finding as to each parent under Section 161.001(b)(1)(E). We overrule each parent's second issue on appeal.

Because a finding that a parent committed one of the acts listed in Section 161.001(b)(1)(A)–(U) is all that is required and because we have held that the evidence is sufficient to support the trial court's findings under subsection (E), we need not address the mother's or the father's first and third issues in which they challenge the findings made pursuant to subsections (D) and (O). *See* TEX. R. APP. P. 47.1.

*This Court's Ruling*

We affirm the trial court's order of termination.

JOHN M. BAILEY

CHIEF JUSTICE

February 14, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1] Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.