**Opinion filed August 15, 2019**



In The

# Elebenth Court of Appeals

_____

## No. 11-19-00084-CV

_____

## IN THE INTEREST OF L.E., A CHILD

**On Appeal from the 220th District Court**
**Comanche County, Texas**
**Trial Court Cause No. FM15517**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and father of L.E. Both parents appeal. On appeal, the mother presents three issues in which she challenges the sufficiency of the evidence as to the termination of her parental rights and two issues in which she challenges the trial court's order insofar as it relates to the payment of child support. The father presents five issues challenging the portion of the trial court's order that relates to the payment of child support. We reverse and render in part, and we affirm in part.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b).

In this case, the trial court found that both parents had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found that the parents had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being; that the parents had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being; and that the parents had failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of each parent's parental rights would be in the best interest of the child.

On appeal, neither parent challenges the best interest finding, but the mother challenges the findings made by the trial court pursuant to subsections (D), (E), and (O).

*Background Facts*

The record shows that the Department first became involved with the family in 2015 or early 2016 when L.E. was four years old. At that time, there were allegations of sexual abuse involving L.E. and physical abuse involving L.E. and her brothers, H.G. and N.G.

In early 2016, the mother took L.E. to Head Start with lots of bruises and red marks on L.E.'s face. L.E. said that "mommy had hit her." According to L.E.'s teacher, L.E. often had bruises on her legs and arms. L.E.'s brothers, H.G. and N.G., "always" had bruises everywhere. At Head Start, the mother was observed jerking N.G.'s "leash" and pulling H.G. by the arm "really hard."

Additionally, both the father and a friend of the mother testified about the mother's physical abuse of her children. At the termination hearing, the father testified that the mother was abusive to their three children—L.E., H.G., and N.G. The father testified about specific instances of physical abuse committed by the mother. The mother admitted to striking L.E. in the face in 2016 and to accidentally hitting H.G. with a shoe, but otherwise denied any physical abuse of her children.

The mother, however, did admit that she knew about the father's sexual abuse of L.E. at the time that he was committing those crimes against their daughter. The mother testified that the father began sexually assaulting L.E. when L.E. was three and one-half or four years old. According to the mother, she had walked in on the father and L.E. when L.E. was between the father's legs and the father's shorts were "part way down on his legs." The mother testified that she asked the father what was going on and that he told her "[L.E.] was just sucking his finger." Another instance of sexual abuse occurred when L.E. was in the shower with the father and

3

the mother was in the same bathroom bathing H.G. in his little bathtub. Prior to getting in the shower, the father told the mother that, since the mother would not perform oral sex on him, he would just have L.E. do it instead. While L.E. and the father were in the shower together, L.E. started making noises; the mother heard L.E. "coughing and choking." The mother did nothing—except go to the other room with H.G. The mother also testified that L.E. would tell the mother about the things that the father did to L.E. After the shower incident, L.E. told her mother that "Daddy stuck his thing in my mouth." The mother still did nothing to protect L.E.

The mother testified that the father sexually assaulted the mother anally while L.E. and H.G. were in the room. The mother also testified that, one time when she refused to have "anal sex" with the father, he told her that "he would get it from [L.E.]." The father then "got the Vaseline out," and the mother, who said she thought the father was joking, went to go take a shower. According to the mother, the father sexually abused L.E. during a period of more than one year. The mother admitted that she was not protective of L.E.

The mother also testified that the father had grabbed H.G. by the neck and choked him when he was about one year old and would not stop crying. The mother did not report any of the father's conduct to the police or to CPS, did not ask the father to leave (they lived at the mother's grandmother's house at the time), and did nothing to keep the father away from L.E.

The mother eventually took L.E. to counseling because of L.E.'s "anger problems." During counseling, L.E. disclosed the sexual abuse. L.E. said that her father had hurt her, and with the help of dolls, L.E. indicated that she and the father had engaged in male-to-female oral sex, female-to-male oral sex, vaginal sex, and anal sex. The mother initially denied having any knowledge of the father's sexual abuse of L.E. However, the mother eventually admitted to L.E.'s counselor that the mother knew about and witnessed some of the sexual abuse. The mother

4

subsequently testified against the father at his trial. A Head Start employee overheard a conversation about the trial between the mother and one of the mother's friends. In that conversation, the mother admitted that she had watched the father "do whatever he was doing in the shower" and that the mother then "cleaned [L.E.] off after he was done."

In 2017, the father was convicted of the offense of aggravated sexual assault of a child (L.E.) under the age of six years old. The father was sentenced to serve a term of life in prison for that offense.

At the time of the parental termination hearing, L.E. was seven years old. Evidence was introduced regarding the Department's plans for L.E.; the improvement in her behavior and her disposition while in the home of the relatives with whom she had been placed; the placement relatives' bond with, love for, and desire to adopt L.E.; and L.E.'s best interest.

*Analysis*

In her second issue on appeal, the mother challenges the sufficiency of the evidence to support the finding made by the trial court pursuant to subsection (E) of Section 161.001(b)(1). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

Here, the record contains clear and convincing evidence that the mother engaged in conduct that endangered the child. The trial court could reasonably have formed a firm belief or conviction that the mother's actions had endangered the child; the mother engaged in a continued course of conduct that included not only the mother's failure to protect L.E. from the father's sexual abuse and the mother's complicity in that abuse, but also the mother's own physical abuse of L.E. and L.E.'s brothers. Thus, the evidence supports the trial court's finding that the mother (1) had engaged in conduct that endangered L.E.'s physical or emotional well-being or (2) had knowingly placed L.E. with the father who engaged in conduct that endangered L.E.'s physical or emotional well-being. Consequently, we hold that the evidence is legally and factually sufficient to support the trial court's finding as to the mother under Section 161.001(b)(1)(E). We overrule the mother's second issue on appeal.

Because a finding that a parent committed one of the acts listed in Section 161.001(b)(1)(A)–(U) is all that is required and because we have held that the evidence is sufficient to support the trial court's finding under subsection (E), we need not address the mother's first and third issues in which she challenges the findings made pursuant to subsections (D) and (O). *See* TEX. R. APP. P. 47.1.

In the mother's fourth and fifth issues and in all five of the father's issues, the parents challenge the portion of the trial court's order that relates to child support. The record shows that continued child support was not addressed at trial and that the trial court did not mention child support when it pronounced its findings in open court at the end of the trial. The order of termination, however, contains the following provisions regarding child support:

14.1　Pursuant to § 154.001, Texas Family Code, **IT IS ORDERED** that the parents shall pay child support for the child as set forth in Attachment A to this Order, which is incorporated herein as if set out verbatim in this paragraph.

6

14.[2]  Child support arrearage owed to the Department for child support not paid by [**the mother**] during the pendency of this suit **IS/IS NOT** waived.

14.[3]  Child support arrearage owed to the Department for child support not paid by [**the father**] during the pendency of this suit **IS/IS NOT** waived.

We note that the record does not contain an "Attachment A" as mentioned in paragraph 14.1 and that the trial court did not circle or strike through any portion of the wording "**IS/IS NOT**" in the paragraphs 14.[2] and 14.[3].

The Texas Family Code provides in relevant part that a court "may order each person *who is financially able* and whose parental rights have been terminated with respect to . . . a child in substitute care for whom the department has been appointed managing conservator . . . to support the child in the manner specified by the order." FAM. § 154.001(a-1) (emphasis added).  The Department "concedes that the record does not support the trial court's order of child support" and requests that this court reverse the portion of the trial court's order that relates to child support.  Based upon our review of the entire record, we agree with the parties that the record does not contain legally sufficient evidence that either parent "is financially able." Consequently, we reverse the order of the trial court to the extent that it orders the parents to pay child support.  Because we also agree that the record does not show that either parent was ordered to pay child support during the pendency of this case, we reverse the trial court's order to the extent that it orders the parents to pay such arrearages.  We sustain the legal sufficiency challenges in the mother's fourth issue and the father's first and second issues.  Accordingly, we need not address the mother's fifth issue or the father's remaining issues, which all relate to child support. *See* TEX. R. APP. P. 47.1.

*This Court's Ruling*

We reverse the order of the trial court only insofar as it ordered the mother and the father to pay child support, and we render judgment striking paragraphs 14.1, 14.[2], and 14.[3] from the trial court's order. In all other respects, we affirm the trial court's order of termination.


KEITH STRETCHER

JUSTICE


August 15, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.