**Opinion filed June 5, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00372-CV

_____

## IN THE INTEREST OF D.E.R., T.M.A., S.N.H., AND T.W.H., CHILDREN

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. C45088**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order of termination involving the parents of D.E.R., T.M.A., S.N.H., and T.W.H., the children. The trial court terminated the parental rights of the mother as to all four children and the parental rights of the fathers of D.E.R., S.N.H., and T.W.H. The mother appeals, as does the father of S.N.H. and T.W.H.[1] We affirm.

---

[1]Because the fathers of D.E.R. and T.M.A. have not appealed, we refer to the father of S.N.H. and T.W.H. as "the father" in this opinion. We note that the parental rights of T.M.A.'s father were not terminated and that he was appointed to be T.M.A.'s managing conservator.

The mother presents two issues on appeal. In those issues, she challenges the legal and factual sufficiency of the evidence to support termination and the trial court's finding as to best interest. The father presents one issue challenging the legal and factual sufficiency of the evidence as to the findings regarding his conduct, but the father does not challenge the trial court's best interest finding.

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the

agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the parents had each committed three of the acts listed in Section 161.001(1). The trial court found that the mother had committed acts found in subsections (D), (E), and (O) and that the father had committed acts found in subsections (D), (E), and (P). Specifically, the trial court found that both parents had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being; that both parents had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being; that the mother had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parents for abuse or neglect; and that the father (a) used a controlled substance in a manner that endangered the children and (b) either failed to complete a substance abuse treatment program or continued to abuse a controlled substance after completing a substance abuse treatment program. The trial court also found, pursuant to Section 161.001(2), that termination of the mother's and the father's parental rights would be in the best interest of the children.

The evidence at the final hearing in November 2013 showed that the children—who at the time of the hearing were ages twelve, nine, six, and two—

had been removed from the parents on November 28, 2012. When the Department's investigator arrived on that date, police were searching the residence where the mother and the father lived with all four children. The father was not present at the time and refused to come home; the mother was arrested for possession of a controlled substance. An investigator for the Department testified that, inside the residence, there were "pills" within the children's reach and that "dangerous" construction equipment, including a saw, was found in one child's bedroom. The mother tested positive for methamphetamine on that date. Another Department investigator testified that the police had received information concerning illegal drug trafficking at the parents' residence. The mother said she was unaware of any drug trafficking but was aware of the presence of the hydrocodone pills for which she had no prescription. A tablet that appeared to be a drug ledger was also found in the residence; it was in the mother's handwriting. The mother admitted that the handwriting was hers, but she stated that she had "written as instructed" by the father.

The Department's caseworker, Melanie Scott, testified that the mother was addicted to drugs and "couldn't get honest." The mother continued to test positive for drugs after completing a twelve-step program. According to Scott, the mother was not very cooperative with the Department but did complete some, but not all, of her family service plan. The mother visited the children regularly when she was not incarcerated, but little bonding or nurturing occurred during those visits. After visitation with the mother, D.E.R. was often angry, upset, and physically sick. D.E.R. did not understand why she was in the Department's care, and she accused Scott one time of trying to tear up D.E.R.'s family. The record does not show whether D.E.R.'s anxiety eased after the visitations ceased when the mother was sent to prison, nor does the record reflect the desires of the children.

4

At the time of trial, the mother and the father were incarcerated. The mother was in prison for tampering with a government document; she had been incarcerated since July 2013 and expected to be released on September 27, 2014. The father had been in prison since March 2013 for violating his parole. Scott testified that the parents were unable to maintain appropriate housing for a six-month period and that the mother was unable to provide the children with a safe environment. The Department attempted a reunification, but the parents were unable to reduce the risk to the children. Scott also testified that a home study of the children's maternal grandmother did not go well and showed no stability.

The mother testified that she had completed some of the court-ordered services, such as a parenting class, a domestic violence class, a values clarification class, a twelve-step program, and some counseling sessions. The mother testified that she did not test positive for drugs after May 13, 2013, when she completed her twelve-step program. She also testified that she was enrolled in a vocational class in prison to become an electrician and a cognitive class to change "criminal mind thinking." The mother admitted making some mistakes but did not want her parental rights terminated. She testified that she thought her children would be emotionally harmed if her rights were terminated.

Scott testified that termination of the mother's parental rights would be in the children's best interest. Scott testified that the children need stability; that T.M.A.'s father has provided a loving, stable home for her with a good support system; that T.M.A. has done very well in her father's care; and that the father's cousin wants to adopt the other three children. At the time of trial, the Department had just completed a home study for an adoptive placement of D.E.R., S.N.H., and T.W.H. with the father's cousin and the cousin's husband, whom Scott described as an older, stable, loving, and nurturing couple.

We hold that there was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that both parents (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being or (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. FAM. § 161.001(1)(D), (E).

Under subsection (D), we examine evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the children's well-being was the direct result of the parents' conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d at 634; *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

In this case, there was evidence that the children were exposed to dangerous equipment and drugs inside their home. Thus, a finding under subsection (D) was supported because the children's environment was the source of danger. With respect to subsection (E), the evidence showed that the parents used drugs and were involved in drug trafficking. Such acts constituted conduct that endangered the children. The evidence is legally and factually sufficient to support the trial court's findings as to the mother and the father under Section 161.001(1)(D) and

Section 161.001(1)(E). Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the parents' remaining arguments regarding the sufficiency of the evidence to support the trial court's other findings under Section 161.001(1). *See* TEX. R. APP. P. 47.1. The mother's first issue and the father's sole issue are overruled.

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72. We cannot hold that the findings as to best interest are not supported by clear and convincing evidence.

Upon considering the record as it relates to the desires of the children; the emotional and physical needs of the children now and in the future; the emotional and physical danger to the children now and in the future; the parental abilities of the mother, the father, T.M.A.'s father, and the couple seeking to adopt the other three children; the plans for the children by the Department; the instability of the parents' home; the stability of the children's placement and proposed placement; the acts and omissions indicating that the parent-child relationship was not a proper one; the dangers associated with the parents' home; and both parents' continued drug use, we hold that the evidence is sufficient to support the finding that termination of the mother's parental rights is in the best interest of the children. *See id.* The mother's second issue is overruled.

We affirm the trial court's order of termination.

June 5, 2014                                                    JIM R. WRIGHT

Panel consists of: Wright, C.J.,                                CHIEF JUSTICE
Willson, J., and Bailey, J.

7