**Opinion filed January 5, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00201-CV

_____

## IN THE INTEREST OF M.S., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 8412-CX**

## M E M O R A N D U M   O P I N I O N

The trial court entered an order in which it terminated the parental rights of the mother and the father of M.S. Both parents appeal. On appeal, they present four issues challenging the sufficiency of the evidence. We affirm.

Appellants challenge the legal and factual sufficiency of the evidence to support the trial court's findings in support of termination. Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180

S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that Appellants had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found that each parent had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being; that each parent had engaged in

2

conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being; and that each parent had failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellants' parental rights would be in the best interest of the child. Appellants challenge each of these findings.

The record shows that M.S. was an infant when the Department became involved in this case. At that time, M.S. had been hospitalized and was being treated for seizures. One of the attending nurses testified that M.S. was dirty and irritable, had a urinary tract infection, and was not being fed properly. The nurse also had concerns about the parents' cleanliness. The family's room at the hospital became infested with roaches, and a nurse observed roaches on M.S.'s bottle and clothing. At the hospital, the mother had nothing to do with M.S.; instead, the mother just slept. The parents were improperly mixing the formula—using double the amount of water—and feeding M.S. while she was lying in the crib—propping the bottle in the crib. The nurses instructed the parents not to prop the bottle in the crib because M.S. could choke and die. Despite these instructions, the father continued to prop the bottle in the crib when feeding M.S. at the hospital. The treating physician informed the parents that the improper preparation of the formula could cause M.S. to suffer from seizures, brain damage, or death. He also informed them about the dangers of propping bottles. However, the parents did not heed the doctor's instructions.

A Department investigator and a Family Based Safety Services specialist visited the family at the hospital. They had concerns about the father's mental health

and the mother's lack of interaction with M.S. The father admitted that he had sexually abused his little sister when he was young. The mother and the father testified at trial that the father watched "porn" while he bathed M.S. The mother and the father also testified that the father had forced the mother to have intercourse. Additionally, the mother's brother lived in the home with Appellants and M.S.; that brother had sexually abused the mother when they were younger.

During a visit to Appellants' home, the investigator determined that the home was not a safe environment for M.S. The house smelled of cat urine. There were two cats, two dogs, multiple piles of cat feces, dog urine everywhere, trash everywhere, mold in the bathroom, swarming gnats, and roaches everywhere. The refrigerator was dirty, moldy, and roach-infested. The house was also infested with fleas. The conservatorship worker testified that Appellants' house "was one of the worst homes that [she had] seen." The conservatorship worker also testified that, at the time of the final hearing, the parents had only partially complied with the requirements of the court-ordered family service plan.

Sometime after M.S. was removed from Appellants' care, she was placed with a paternal relative. The placement expressed concerns about the father's mental health and "porn" issues, including "incest-type porn."

M.S. was healthy and appeared to be doing well in the placement's care. The placement expressed a desire to adopt M.S. Although there was evidence that Appellants love M.S. and that, during the nine days prior to the final hearing, they had made great strides to improve the conditions of their home, there was also evidence that M.S. and the placement had developed a very strong bond, that the placement provided an appropriate home for M.S., and that M.S. is happy in the placement's home. The conservatorship caseworker and the placement believed that termination of both parents' parental rights would be in M.S.'s best interest.

The record contains clear and convincing evidence that Appellants had knowingly placed or knowingly allowed M.S. to remain in conditions or surroundings that endangered her physical or emotional well-being, that Appellants had engaged in conduct that endangered M.S.'s physical or emotional well-being, and that Appellants had failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of M.S.— as required to support findings under Section 161.001(b)(1)(D), (E), and (O). Under subsection (D), we examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d at 634; *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

The evidence at trial revealed that, at the time of removal, the parents' home was unsanitary and unsafe and that the parents endangered M.S. by their conduct regarding the preparation and propping of her bottles. This conduct continued even after the parents were informed of the dangers related thereto. Additionally, the evidence was undisputed that the parents did not fully comply with their court-ordered family service plan. We hold that the evidence is legally and factually

sufficient to support the findings as to each parent under subsections (D), (E), and (O). Accordingly, we overrule Appellants' first, second, and third issues.

In their final issue, Appellants challenge the sufficiency of the evidence in support of the trial court's best interest findings. Based upon the *Holley* factors and the evidence in the record, we cannot hold that the trial court's best interest findings are not supported by clear and convincing evidence. *See Holley*, 544 S.W.2d at 371–72. Considering the evidence of the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the placement, the plans for the placement to adopt the child, the stability of the placement's home, the deplorable conditions of the parents' home, the parents' continued improper feeding of M.S., the father's sexual proclivities, the mother's continued relationship with the father in light of those proclivities, and the presence in their home of a second sexual offender, we conclude that the trial court could reasonably have formed a firm belief or conviction that it would be in M.S.'s best interest for her mother's and her father's parental rights to be terminated. We hold that the evidence is both legally and factually sufficient to support the trial court's best interest findings. Accordingly, we overrule Appellants' fourth issue.

We affirm the trial court's order of termination.


JIM R. WRIGHT

January 5, 2018                                    SENIOR CHIEF JUSTICE

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[1]

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.