**Opinion filed April 30, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00245-CV

_____

## IN THE INTEREST OF D.T.M., J.B.M., AND R.A.M., CHILDREN

**On Appeal from the 358th District Court**

**Ector County, Texas**

**Trial Court Cause No. D-5392-AD**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the parents of D.T.M., J.B.M., and R.A.M. The children's mother filed a notice of appeal, and in four issues on appeal, she challenges the legal and factual sufficiency of the evidence to support the termination of her rights.[1] We affirm.

I. *Termination Findings and Standards*

The standards of review with respect to the mother's appellate issues are well settled. The termination of parental rights must be supported by clear and

---

[1]The children's father voluntarily relinquished his parental rights and did not file an appeal.

convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found, pursuant to Section 161.001(2), that termination of the mother's parental rights would be in the best interest of the children and that the mother had committed three of the acts listed in Section 161.001(1)—those found in subsections (D), (E), and (F). Specifically, the trial court found that the mother had knowingly placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, and had failed to support the children in accordance with her ability for a one-year period. *See id.* § 161.001(1)(D), (E), (F).

## II. *Analysis*

### A. *Acts of the Mother*

In her first and second issues, the mother challenges the legal and factual sufficiency of the evidence to support the findings made pursuant to Section 161.001(1)(D), (E), and (F). Because we hold that the evidence is sufficient to support the trial court's finding under subsection (E), we do not address the mother's sufficiency challenges with respect to (D) and (F). *See* TEX. R. APP. P. 47.1. The trial court found that the mother had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. *See* FAM. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no

pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use and domestic violence may constitute evidence of endangerment. *Id.*; *C.J.O.*, 325 S.W.3d at 265.

The children's paternal grandfather and his wife filed a petition in December 2013 to terminate the parents' rights and adopt D.T.M., J.B.M., and R.A.M. At that time, the children had lived with the petitioners for almost two years. The parents had voluntarily placed the children in the petitioners' home in January 2012 when the parents were both arrested for burglary of a habitation. At the time of the children's placement with the petitioners, the Department of Family and Protective Services already had a pending case involving the family, and neither parent had completed any of the services at the time of arrest. This was the Department's third involvement with the family. The Department closed its case in 2012 after the children were placed with the petitioners. After the voluntary placement, the trial court entered an order in March 2012 and appointed the paternal grandfather and the mother as joint managing conservators of the children, with the grandfather to have the right to designate the primary residence and the mother to have limited, supervised visitation.

The record shows that the mother had an extensive history with the Department that began when D.T.M. was young and involved a pattern of child neglect. The reasons for the Department's involvement with the family were always the same: domestic violence between the parents, drug use by the parents, instability, and an unsafe home. The evidence was undisputed at trial that both the mother and the father were drug abusers, had drugs in their home, and used drugs while the children were in their care. The mother had used drugs off and on for most of the children's lives. She had been to rehab in 2006 during one of the Department's cases.

4

However, she resumed her drug use after successfully completing a drug rehab program. The mother used methamphetamine and cocaine.

In addition to her use of drugs, the mother had a criminal history that included thefts, evading arrest, driving while intoxicated, and burglary of a habitation. At the time of trial, the mother had just been released on parole from the Texas Department of Criminal Justice. She had been convicted of the second-degree felony offense of burglary of a habitation and had served seventeen months of a three-year sentence. All of these offenses occurred sometime after her first child was born.

The mother also exposed the children to domestic violence. There was evidence of "chronic habitual" domestic violence between the parents. The father was arrested at least three times (in 2005 or 2006, 2009, and 2011) for assaulting the mother, and there were other unreported incidents of violence committed by the father against the mother. One particularly violent incident occurred in 2009 when the father "busted the main artery behind [the mother's] left eye." That incident resulted in the mother having to undergo "immediate" surgery for a brain injury. Despite the domestic violence, the mother still loved the father and wanted their family to be together. The mother admitted that the children were present during some of the incidents of domestic violence.

A woman who lived near the family for about one and one-half years testified that the children would come to her house frequently and ask for food and something to drink. The neighbor fed the children and allowed them to come and go when they wanted. According to the neighbor, the children were not clean.

We hold that there was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the mother engaged in a course of conduct that endangered the children's physical or emotional well-being. *See* FAM. § 161.001(1)(E). Because the evidence is both legally and factually sufficient

to support the finding made by the trial court under Section 161.001(1)(E), we overrule the mother's first and second issues.

## B. Children's Best Interest

In her third and fourth issues, the mother challenges the best interest finding. She argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights would be in the best interest of the children. We disagree.

At the time of trial in May 2014, the children were ten, six, and five years old, respectively. They had been living with the petitioners since January 2012. In a March 2012 order, the trial court found a pattern of child neglect by the mother and permitted the mother to have supervised visitation only. The mother did not regularly visit the children even during the periods when she had been released from jail. The mother acknowledged that, at the time of trial, she was not in a position to have the children come live with her, and she admitted that she had made mistakes in the past but suggested that things were different now. However, the mother's social media postings and her failure to perform any of the court-ordered services seemed to belie the mother's suggestion. The mother's past actions, which included exposing the children to drug use and domestic violence, also indicated that she did not act in the best interest of her children.

A Department supervisor, who had previously been the family's caseworker, testified that the petitioners were an appropriate placement for the children and that it would be in the children's best interest to remain with the petitioners. The supervisor also testified that the Department had been involved with the mother for about nine years and that the mother had "been given the opportunity over and over and over again to do what is right by her children and has failed to do so."

The children's paternal grandmother, an ex-wife of the petitioner grandfather, testified that she believed that termination of both parents' rights would be in the

6

best interest of the children. Her opinion was based not only on the parents' past actions but also on the positive changes in the children that occurred after they went to live with the petitioners.

The mother's grandmother thought that termination of the mother's rights would be detrimental to the children, but she agreed that the children had made progress since going to live with the petitioners. She "deeply appreciate[d]" the "wonderful job" that the petitioners had done with the children. The mother's grandmother also acknowledged that the mother had a drug problem during most of the children's lives, took drugs while the children were present, and continued a relationship with an abusive man.

The petitioners both testified at trial. Their testimony indicated that they love the children, are financially stable, and provide a good home for the children. The children are happy with the petitioners. The children's behavior had improved tremendously while in the petitioners' care; when the children came to live with the petitioners, the children were outspoken, had no boundaries or rules, hid food under their beds during the night, and used profane language. At the time of trial, the children were all doing exceptionally well and were involved in many activities. The petitioners had complied with the Department's request that the children receive counseling. The children loved the petitioners, expressed no desire to see their mother, and called the petitioners "[M]om" and "Pop." The petitioners requested that the mother's rights be terminated, believed termination would be in the children's best interest, and asked to be permitted to adopt and raise the children.

Based on the evidence presented at trial with respect to the desires of the children, the emotional and physical needs of the children, the emotional and physical danger to the children, the parental abilities of the individuals seeking custody, the programs available to assist these individuals to promote the best interest of the children, the plans for the children by these individuals, the stability

7

of the petitioners' home, the instability of the mother's home, the acts or omissions of the mother with respect to the children, and any excuse for the acts or omissions of the mother, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of each of the children. *See Holley*, 544 S.W.2d at 371–72. We cannot hold that the finding as to best interest is not supported by clear and convincing evidence. Because the evidence is both legally and factually sufficient to support the finding that termination of the mother's rights would be in the children's best interest, we overrule the mother's third and fourth issues.

We affirm the trial court's order of termination.


MIKE WILLSON

JUSTICE


April 30, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.