**Opinion filed June 21, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00362-CV

_____

## IN THE INTEREST OF A.R.C. AND S.A.C., CHILDREN

**On Appeal from the County Court at Law No. 2**
**Ector County, Texas**
**Trial Court Cause No. CC2-16-074-PC**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and father of A.R.C. and S.A.C. Each parent filed a notice of appeal, and each parent presents eight issues for appellate review. In most of the issues, the parents challenge the sufficiency of the evidence to support termination. The mother additionally asserts that the trial court improperly based its decision on the parents' economic situation. We affirm.

I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017). To determine if

the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that each parent had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found that the parents had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being; that the parents had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being; and that each parent had failed to comply with the provisions of a court order that specifically established the actions necessary for that parent to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of their removal from the parent for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of the parents' parental rights would be in the best interest of the children.

## II. *Evidence at Trial*

The record shows that the Department first became involved with the parents in July 2016 after a report of neglectful supervision of the children. During a follow-up visit, the Department's investigator went to the RV where the family resided. The investigator described the RV as "unsanitary" and the children as dirty. Clothes and trash covered floor. There was no food in the RV, no sleeping area for the children, and no running water. A marihuana pipe was located on a shelf where it could be reached by the children, and the mother admitted to the investigator that the parents would test positive for methamphetamine if they were to drug test that day. The Department initiated a safety plan in which the mother and the children were to live with and be supervised by the mother's father. Shortly thereafter, the mother left that house, and the Department proceeded with an emergency removal. At the time of removal, A.R.C. was of school age, but the parents had not enrolled him in school.

The parents had an ongoing history of neglectful supervision and drug use while the children were in their care. The parents' use of drugs endangered the children. The record indicates that S.A.C. had tested positive for THC and methamphetamine at birth. The Department's conservatorship worker noted that, based upon both parents' positive drug tests after removal, ongoing drug use by the parents was still a concern at the time of trial. In addition, the parents had failed to provide a safe, stable home environment for the children. The parents moved from place to place and had been evicted shortly before the final hearing.

The children were placed with their maternal grandfather and his wife at the time of removal. The children remained there during the entirety of the case. The record reveals that the maternal grandfather wishes to adopt the children and that he had already completed the licensing process at the time of trial. The maternal grandfather testified that the children were doing well in his home but that, earlier in the case when the parents were still visiting the children, the children acted up for a few days after the visits. The conservatorship worker testified that the children were doing well in the grandfather's home and that the stability he provided was beneficial to the children.

The evidence showed that the children loved their parents and that the parents did not want their parental rights to be terminated. Nonetheless, the Department's goal for the children was termination of the parents' rights and adoption by the maternal grandfather. The Department's investigator and the conservatorship worker believed that it would be in the best interest of the children to terminate the parental rights of both parents.

### III. *Issues Presented and Analysis*

In the mother's first four issues and the father's third through sixth issues, the parents challenge the legal and factual sufficiency of the evidence to support the findings made by the trial court pursuant to subsections (D) and (E) of

4

Section 161.001(b)(1). In the mother's fifth issue and the father's seventh and eighth issues, the parents challenge the finding made pursuant to subsection (O). In the mother's sixth and seventh issues and in the father's first and second issues, the parents challenge the best interest finding. In her eighth issue, the mother asserts that the trial court improperly based its decision on evidence that the mother was economically disadvantaged.

*A. Findings under Section 161.001(b)(1)*

In the mother's third and fourth issues and the father's fifth and sixth issues, the parents challenge the trial court's findings under subsection (E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the children's well-being was the direct result of the parents' conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.*

Here, the record contains clear and convincing evidence that both parents had engaged in drug use while the children were in their care and that the parents' drug use endangered the children. Moreover, the Department presented evidence that the parents continued to use drugs while this case was pending. The evidence supports the trial court's finding that the parents endangered the children's physical or emotional well-being. Consequently, we hold that the evidence is legally and factually sufficient to support the trial court's findings under

5

Section 161.001(b)(1)(E).  We overrule the mother's third and fourth issues and the father's fifth and sixth issues.

Because a finding that a parent committed one of the acts listed in Section 161.001(b)(1)(A)–(U) is all that is required and because we have held that the evidence is sufficient to support the trial court's findings under subsection (E), we need not address the mother's first, second, and fifth issues or the father's third, fourth, seventh, and eighth issues in which they challenge the findings made pursuant to subsections (D) and (O).  *See* TEX. R. APP. P. 47.1.

*B. Best Interest of the Children*

In the mother's sixth and seventh issues and the father's first and second issues, the parents challenge the legal and factual sufficiency of the evidence to support the findings that termination of their parental rights would be in the best interest of their children.  We hold that, based on clear and convincing evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of each parent's parental rights would be in the best interest of the children.  *See Holley*, 544 S.W.2d at 371–72.  Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the parents and the grandfather who wishes to adopt the children, the plans for the children by the Department, the instability of the parents' home, the stability of the grandfather's home, and the parents' drug use, we hold that the evidence is sufficient to support the finding that termination of each parent's parental rights is in the best interest of the children.  *See id.*  We overrule the mother's sixth and seventh issues and the father's first and second issues.

In her eighth issue, the mother argues that the best interest standard cannot be met by merely showing that she is economically disadvantaged and that the children

would be better off living elsewhere.  *See* FAM. § 161.001(c)(2); *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.).  While we agree with the mother's statement of the appropriate standard, we do not agree that the trial court based its findings on the parents' economic situation or the mere fact that the children would be better off living with their grandfather.  Although the conservatorship worker testified, "We're looking at the best interest of the kids.  Grandpa can provide and [mother] and [father] cannot," she also testified that termination was in the best interest of the children based upon the parents' drug use.  Moreover, the trial court specifically found that its order of termination was "not based on evidence" that the parents were "economically disadvantaged."  We overrule the mother's eighth issue.

## IV. *This Court's Ruling*

We affirm the trial court's order of termination.


MIKE WILLSON

JUSTICE


June 21, 2018

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[1]

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.