**Opinion filed January 31, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00207-CV

_____

## IN THE INTEREST OF J.W.M., JR., A CHILD

**On Appeal from the 446th District Court**
**Ector County, Texas**
**Trial Court Cause No. E-17-065-PC**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and father of J.W.M., Jr.  The father filed a notice of appeal.  In eight issues on appeal, he challenges the legal and factual sufficiency of the evidence.  We affirm.

The termination of parental rights must be supported by clear and convincing evidence.  TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018).  To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that Appellant had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found that Appellant had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's

physical or emotional well-being; that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being; and that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from Appellant for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the child. Appellant contends on appeal that the evidence is legally and factually insufficient to support the trial court's findings with respect to the child's best interest and subsections (D), (E), and (O).

The record shows that the Department first became involved with J.W.M., Jr. when he was six months old. The Department had received a report of neglectful supervision by the parents and sent an investigator to locate the family. The investigator did not locate them until the next day; they were at the mother's grandmother's residence. Law enforcement were present at that time; they had received a call about two individuals "hopping" fences with a baby. According to the investigator, Appellant "seemed really anxious"; he "kept looking around and kept moving" and appeared to be "under the influence."

Appellant told the investigator that his probation was going to be revoked soon. The Department presented evidence that Appellant was a convicted sex offender based on his relationship with the mother when she was fifteen years old and he was twenty-eight years old. The child's mother indicated that Appellant's probation was being revoked because he had tested positive for methamphetamine and had not been compliant in several months. Appellant's probation officer

confirmed that Appellant had "failed a plethora of drug tests." The record reflects that both parents were addicted to methamphetamine.

According to the child's mother, she, Appellant, and the child were living in a van. The investigator testified that the van contained pillows, sheets, and clothes but that it did not contain an appropriate place for a baby to sleep or any food or formula for a baby, although she did find an empty can of formula. After the child's mother admitted that she had smoked methamphetamine that day, the Department attempted to initiate a safety plan; however, Appellant's actions and his adamance about his right to see the child resulted in a removal instead of a safety plan.

Although the child appeared to be happy and healthy at that time, removal was necessitated by the parents' drug use, the family's living conditions, and the parents' refusal to cooperate with a safety plan. The child was placed with a foster family, and the parents were ordered to comply with the terms of their family service plan. The child was subsequently placed with a paternal aunt and uncle, but that placement failed due to marital issues between the aunt and uncle. When the aunt informed the Department that neither she nor the uncle could continue as a placement for the child, the child was returned to the foster parents with whom he had originally been placed.

A conservatorship caseworker for the Department testified that she had been involved in this case since the adversary hearing. She testified that, at a visitation early on in this case, the parents brought chocolate doughnuts and sweet tea for the child. The caseworker, on multiple occasions, had to explain to the parents what type of food was appropriate for a six-month-old child.

About two months after the removal, Appellant was arrested for evading arrest and for not complying with the requirements of his sex-offender registration. Appellant completed the parenting packets and a psychological evaluation while he was in jail. He remained incarcerated at the time of the final hearing on termination.

The testimony at that hearing indicated that Appellant would remain incarcerated for the foreseeable future.

The caseworker testified that the child bonded quickly with the foster parents. She also indicated that the foster parents provided the child with an appropriate home and tended to all of his medical needs, including taking him to a specialist to obtain a corrective helmet that the child had to wear for six to nine months, twenty-three hours per day. The foster mother testified that the child had bonded with everyone in her family and that she and her husband would like to adopt the child. The Department's plan for the child was termination of the parents' parental rights and adoption by the child's foster parents.

The month before the final hearing, the child's mother indicated that she wanted to relinquish her parental rights because she could not provide for him and because relinquishment would be in the child's best interest. We note that the mother did not follow through with the paperwork to relinquish her parental rights. The caseworker testified that termination of both parents' parental rights would be in the child's best interest. The child's attorney/guardian ad litem agreed with the Department that termination was appropriate.

In his fifth and sixth issues, Appellant challenges the legal and factual sufficiency of the evidence to support the finding made by the trial court pursuant to subsection (E) of Section 161.001(b)(1). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The

offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.*

Here, the record contains clear and convincing evidence that both parents had engaged in drug use while the child was in their care and had failed to provide a safe environment for the child. The trial court could reasonably have formed a firm belief or conviction that Appellant's actions—a continued course of conduct that included methamphetamine use, other violations of his probation, and failing to register as a sex offender—had endangered the child. The evidence supports the trial court's finding that Appellant endangered the child's physical or emotional well-being. Consequently, we hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(b)(1)(E). We overrule Appellant's fifth and sixth issues.

Because a finding that a parent committed one of the acts listed in Section 161.001(b)(1)(A)–(U) is all that is required and because we have held that the evidence is sufficient to support the trial court's findings under subsection (E), we need not address Appellant's third, fourth, seventh, and eighth issues in which he challenges the findings made pursuant to subsections (D) and (O). *See* TEX. R. APP. P. 47.1.

In Appellant's first and second issues, he challenges the legal and factual sufficiency of the evidence to support the finding that termination of his parental rights would be in the best interest of the child. We hold that, based on clear and convincing evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and

6

physical danger to the child now and in the future, the parental abilities of Appellant and the foster parents that wish to adopt the child, the plans for the child by the Department, Appellant's incarceration, Appellant's inability to provide a safe and stable home for the child, the stability of the foster parents' home, Appellant's criminal history, and Appellant's drug use, we hold that the evidence is sufficient to support the finding that termination of Appellant's parental rights is in the best interest of the child. *See id.* We overrule Appellant's first and second issues.

We affirm the trial court's order of termination.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


January 31, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.