**Opinion filed April 25, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00301-CV

_____

## IN THE INTEREST OF J.S. AND J.S., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 8479-CX**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the parents of J.S. and J.S., whom we will refer to as J.S.1 and J.S.2 in this opinion. The mother filed a notice of appeal.[1] In four issues on appeal, she challenges the legal and factual sufficiency of the evidence. We affirm.

*Termination Standards and Findings*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). To determine if the evidence is legally sufficient in a parental termination case, we review all of the

_____

[1]We note that neither father filed an appeal.

evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that Appellant had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O).

Specifically, the trial court found that Appellant had knowingly placed or knowingly allowed both children to remain in conditions or surroundings that endangered the child's physical or emotional well-being; that Appellant had engaged in conduct or knowingly placed J.S.2 with persons who engaged in conduct that endangered the child's physical or emotional well-being; and that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from Appellant for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of both children. Appellant contends on appeal that the evidence is legally and factually insufficient to support the trial court's findings with respect to the children's best interest and subsections (D), (E), and (O).

*Background Facts*

The record shows that the Department first became involved with the children in this case in 2016, shortly after the birth of J.S.2. At that time, J.S.1 was two years old. Appellant and J.S.2 tested positive for methamphetamine and marihuana shortly after J.S.2's birth. J.S.1 also tested positive for methamphetamine. Appellant admitted that she had been using methamphetamine since she was thirteen years old. Because of Appellant's prolonged use of drugs while she was pregnant with J.S.2, he was born addicted and suffered from withdrawals to such an extent that less aggressive withdrawal treatments did not work; instead, he had to receive narcotic therapy.

When Appellant went to the hospital, she appeared disheveled and unclean and had lots of scabs and sores. She left J.S.1 with a grandmother who also used methamphetamine and had serious health issues. Appellant's paramour, who was

J.S.2's father, also used methamphetamine and admitted that he knew Appellant was using. The children were removed and placed in foster care. After the children were removed, Appellant again used methamphetamine, but she subsequently went to inpatient and then outpatient treatment and did not test positive again while this case was pending.

The evidence reflects that Appellant made significant progress on her family service plan and was awarded a monitored return of the children in September 2017. However, during the monitored return, Appellant's home became unsanitary. There were full trash bags inside, food all over the floor, food containers and trash in a pile of toys, dirty diapers on the floor, piles of clothes, cigarette butts under J.S.1's bed, and lighters on the floor. The conservatorship caseworker spent several hours helping Appellant clean the house. However, the cleanliness of the house declined and was back to the same nasty condition during a subsequent visit by the caseworker. The caseworker testified that Appellant was unable to maintain a sanitary and stable home for the children.

Appellant also neglected the children during the monitored return and permitted J.S.2's father to visit. During the monitored return, the children were unclean, had stuff caked on their faces, had very greasy hair, and smelled horrible. J.S.1 would arrive at preschool in this condition. Appellant sent J.S.1 to school in cold weather without a jacket (even though the school had provided one for her) and without appropriate shoes. J.S.1's teacher testified that, during the time period of the monitored return, J.S.1's behavior digressed; she exhibited aggressive behavior and seemed to be very hungry while in Appellant's care. The teacher visited Appellant's home and found it to be unsanitary. J.S.1 also developed a cavity during the monitored return. Prior to the monitored return, J.S.1 had to have root canals and four crowns because of the extensive cavities that she had when she came into the care of the Department. During the monitored return, J.S.2 developed a bleeding

4

diaper rash. Appellant failed to tend to the children's medical needs or take them to doctor and therapy appointments. We note that J.S.1 was partially deaf in one ear and almost totally deaf in the other. Appellant also failed to tend to her own medical needs, creating a dangerous situation for the children. During a home visit by the caseworker, she noticed that Appellant was pale and asked her to check her blood sugar. Appellant's blood sugar level was 297, but she had no insulin in the house.

The caseworker testified that termination of the parents' parental rights would be in the children's best interest. The child's attorney/guardian ad litem has filed a brief in this appeal in support of the trial court's termination order. And one of the foster parents testified that she did not believe that it would be in the children's best interest to continue to have a relationship with Appellant.

The Department's goal for the children was adoption by the foster parents. The children were bonded with the foster parents, and the foster parents loved the children and wanted to adopt them. Although Appellant was bonded with J.S.1, she had no bond with J.S.2. The foster parents provided a safe and stable home for the children and tended to all of the children's needs. The foster parents even attempted to help Appellant do the same for the children; Appellant, however, was unable to do so even with the help of the caseworker and the foster parents.

*Analysis*

In her first and second issues, Appellant challenges the legal and factual sufficiency of the evidence to support the findings made by the trial court pursuant to subsections (D) and (E) of Section 161.001(b)(1). Under subsection (D), we examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the

parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *D.T.*, 34 S.W.3d at 634; *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.*

Here, the record contains clear and convincing evidence that Appellant engaged in methamphetamine use while she was pregnant with J.S.2. When J.S.2 was born, he suffered from drug withdrawals to such an extent that narcotic therapy was required. Both children tested positive for methamphetamine. Furthermore, during the monitored return, Appellant exposed the children to unsanitary conditions in her home. Appellant failed to provide a safe environment for the children and failed to tend to their needs. The trial court could reasonably have formed a firm belief or conviction that Appellant's actions and the conditions in Appellant's home had endangered the children's physical or emotional well-being. Consequently, we hold that the evidence is legally and factually sufficient to support the trial court's findings under Section 161.001(b)(1)(D) and (E). We overrule Appellant's first and second issues.

Because a finding that a parent committed one of the acts listed in Section 161.001(b)(1)(A)–(U) is all that is required and because we have held that the evidence is sufficient to support the trial court's findings under subsections (D) and (E), we need not address Appellant's third issue, in which she challenges the finding made pursuant to subsection (O). *See* TEX. R. APP. P. 47.1.

In Appellant's fourth issue, she challenges the legal and factual sufficiency of the evidence to support the finding that termination of her parental rights would be

in the best interest of the children. We hold that, based on clear and convincing evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of both children. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children (who were too young to verbally express a desire), the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of Appellant and the foster parents that wish to adopt the children, the plans for the children by the Department, Appellant's inability to provide a safe and sanitary home for the children, Appellant's failure to attend to the needs of the children, the condition of Appellant's home during the monitored return, the stability of the foster parents' home, and Appellant's history of drug use, we hold that the evidence is sufficient to support the finding that termination of Appellant's parental rights is in the best interest of both children. *See id.* We overrule Appellant's fourth issue.

*This Court's Ruling*

We affirm the trial court's order of termination.

JOHN M. BAILEY

CHIEF JUSTICE

April 25, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.