**Opinion filed August 1, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00044-CV

_____

## IN THE INTEREST OF I.A.V., R.A.J., AND C.N.J., CHILDREN

**On Appeal from the 318th District Court**
**Midland County, Texas**
**Trial Court Cause No. FM 52,317**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and the father of I.A.V., R.A.J., and C.N.J. Both parents appeal. The mother presents four issues in which she challenges the sufficiency of the evidence, and the father presents two issues: one in which he complains of the admission of hearsay and one in which he challenges the sufficiency of the evidence. We affirm.

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). To terminate

parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that the mother had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (E), (N), and (O)—and that the father had committed four of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (N), and (O). Specifically, the trial court found that the father had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children, that both parents had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, that both parents had constructively abandoned the children, and that both parents had failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the children. The trial court also found, pursuant to Section 161.001(b)(2), that termination of each parent's parental rights would be in the best interest of the children.

On appeal, the mother challenges the legal and factual sufficiency of the evidence with respect to the findings made pursuant to subsections (E), (N), and (O) and the best interest finding. The father challenges the sufficiency of only the best interest finding. To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably

form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The Department of Family and Protective Services received an intake that included allegations of drug abuse, domestic violence, and physical neglect of the children[1] by the father. The children were removed from the father's home after an investigation by the Department. At that time, I.A.V. was eleven years old, R.A.J. was ten years old, and C.N.J. was nine years old. The children had not bathed in days and were living in deplorable conditions. The father's house had no running

---

[1]We note that another child, two-year-old A.M.J., was also removed from the father's home. A.M.J. has the same father as, but a different mother than, the three children involved in this cause. A.M.J. is the subject of the father's appeal in Cause No. 11-19-00047-CV. Therefore, when we refer to "the children" in this opinion, we mean I.A.V., R.A.J., and C.N.J.

water, and the toilet was three-fourths full of solid waste. Wiring inside the house was exposed. Dirty clothes were strewn about everywhere. Four children and two adults were sleeping in the same bedroom, where there were two mattresses on the floor, because that was the only room in the house that was heated. In the room next to the bedroom, the roof was partially caved in. Also, there were lots of random people in and out of the home, and the father's girlfriend indicated that "they were involved in drugs." Furthermore, although the father denied it, other evidence indicated that he was violent and engaged in domestic violence.

Both the mother and the father had been involved with the Department in the past. The father admitted to having problems with alcohol and marihuana and said that he could not stay clean long enough to maintain a job. At the time of the removal, the father was arrested based on a warrant for failure to appear that was related to a charge of felony driving while intoxicated. At the time of trial, the father had pleaded true to a motion to revoke the felony DWI and was in jail due to a pending charge of forgery of a financial instrument. The father had no idea how long he would be incarcerated. The father admitted to a "small" criminal history, including drug possession and several DWIs; he denied that his criminal history included burglary. He testified that he had been arrested for the possession of cocaine but said that marihuana was his drug of choice. While this case was pending, the father tested positive for methamphetamine. Between the time of removal and the time of trial, the father had not seen the children at all.

The children wanted to live with their mother, but she had a history with the Department, which included a finding of "reason to believe" for physical abuse, as well as a pending criminal charge for the assault of a family member with a deadly weapon. The mother's criminal history included a charge for possession of a controlled substance. The evidence further showed that R.A.J. tested positive for

4

methamphetamine at the time of his birth; that the mother tested positive for cocaine while pregnant with I.A.V.; and that the mother tested positive for methamphetamine during a previous CPS case, at the beginning of this case, and again midway through the case. The mother refused all other requests to submit to a drug test while this case was pending; those refusals were considered to be positive results. The mother also failed to submit to a drug and alcohol assessment, failed to complete parenting classes, failed to complete individual counseling, and failed to maintain any significant contact with the children while this case was pending.

While this case was pending, the Department lost contact with the mother for about three months. The mother had left town to live with a boyfriend. When she returned, her car had been destroyed—apparently by that boyfriend.

When the children were removed, the Department could not find a suitable family member that was available as a placement for the children. Both parents were ordered by the trial court to comply with the provisions of their family service plan so that the children could be returned to them; neither parent did so. I.A.V. and C.N.J. had been placed together in a foster home, and R.A.J. had been placed in a different foster home. R.A.J.'s foster parents were interested in adopting him. Although the children were happy and doing very well in their placements, they missed each other.

The Department's goal for the children was termination of both parents' parental rights. The Department believed that termination of both parents' rights would be in the best interest of the children. The conservatorship caseworker believed, however, that it would not be in the children's best interest for them to have no further contact with their mother. At the time of the final hearing on termination, a fictive-kin placement for all three children together was still being considered by the Department. That placement had been recommended by the

5

mother. The children's guardian ad litem, a CASA volunteer, informed the trial court that the children were happy, safe, and secure "where they're at" and that they are "ready for this to be done." The guardian ad litem recommended that the trial court terminate both parents' parental rights and leave the children in their current placements until the Department could find a suitable placement for all three children together.

In her first issue, the mother challenges the finding under subsection (E). We are required to address this issue. *See In re N.G.*, No. 18-0508, 2019 WL 2147263, at *4 (Tex. May 17, 2019) (concluding that due process and due course of law require an appellate court to address grounds (D) and (E) when raised by the parent on appeal and also require the appellate court to detail its analysis on grounds (D) and (E)). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of such endangerment. *Id.* Domestic violence may also constitute evidence of endangerment. *C.J.O.*, 325 S.W.3d at 265.

The record reflects that the mother had a history of drug use and a recent charge related to domestic violence. She tested positive for methamphetamine around the time of the children's removal, and she refused to test again until five

months later, when she again tested positive for methamphetamine. The mother refused most of the Department's requests to submit to a drug test; her refusals were presumed to be positive results. The mother's drug use constituted a continuing course of conduct that endangered her children. We note that she tested positive for cocaine while pregnant with I.A.V. and that she also tested positive for drugs while pregnant with R.A.J. R.A.J. tested positive for methamphetamine at birth.

We hold that the trial court could have determined from the evidence presented at trial that the mother voluntarily engaged in an endangering course of conduct. *See J.O.A.*, 283 S.W.3d at 345–46. The evidence is legally and factually sufficient to show by clear and convincing evidence that the mother engaged in a continuing course of conduct that endangered the children's physical or emotional well-being; therefore, we overrule her first issue on appeal. Because a finding that a parent committed one of the acts listed in Section 161.001(b)(1)(A)–(U) is all that is required and because the evidence is sufficient to support a finding under subsection (E), we need not address the mother's second and third issues, in which she challenges the findings made pursuant to subsections (N) and (O). *See* TEX. R. APP. P. 47.1.

We next address both parents' legal and factual sufficiency challenges to the trial court's best interest findings, which the mother asserts in her fourth issue and the father asserts in his second issue. We note that the trier of fact is the sole judge of the credibility of the witnesses at trial and that we are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. We have considered the record as it relates to the desires of the children (who all wanted to live with their mother), the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the

7

mother and the father and of the persons with whom the children were placed, the Department's plans for the children, the parents' inability to provide a safe home for the children, the mother's continued use of methamphetamine, the father's use of methamphetamine, the father's history of alcohol and drug abuse, the deplorable conditions of the father's home, the parents' failure to comply with their court-ordered services, and both parents' criminal history.

Despite the children's desires to be returned to their mother and some evidence that it would not be in the children's best interest to sever all ties with their mother, the trial court could reasonably have formed a firm belief or conviction, based on clear and convincing evidence presented at trial and the *Holley* factors, that termination of the mother's parental rights would be in the best interest of all three children. *See Holley*, 544 S.W.2d at 371–72. Additionally, based on clear and convincing evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the father's parental rights would be in the best interest of all three children. *See id.* Therefore, we hold that the evidence is legally and factually sufficient to support the finding that termination of the mother's and the father's parental rights is in the best interest of all three children. *See id.* We overrule the mother's fourth issue and the father's second issue.

The father presents an evidentiary complaint in his first issue. The inclusion and exclusion of evidence is a matter committed to the sound discretion of the trial court. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *E.I. du Pont de Nemours Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). An error in the admission of evidence requires reversal only if it probably caused the

rendition of an improper judgment. *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004); *see* TEX. R. APP. P. 44.1(a)(1).

The father contends that the trial court erred when it overruled his hearsay objection and permitted the conservatorship caseworker to testify about the father's criminal history. *See* TEX. R. EVID. 801 (hearsay). Prior to the caseworker's testimony, the father had testified about his own criminal history, acknowledging that he was currently in jail on a forgery charge and that he had been convicted once for the possession of a controlled substance and more than once for driving while intoxicated. The father denied that he had been arrested for burglary.

The caseworker subsequently testified that she had run the father's criminal history at the onset of the case. When the caseworker was asked about the particulars of the father's criminal history, the father objected on the basis of hearsay and noted the absence of a certified copy of any judgment of conviction. The trial court overruled the father's objection, and the caseworker testified that the father's criminal history included convictions for burglary of a habitation, burglary of a vehicle, and illegal possession of a weapon.

While we agree that the caseworker's testimony constituted hearsay, we note that an exhibit had already been admitted at trial that contained the same information about which the father objected. Prior to any testimony at the trial, the Department offered several exhibits into evidence. All were admitted without objection, including Exhibit No. 1. Exhibit No. 1, the father's psychological evaluation, contained the following statement: "[The father] has an extensive criminal history dating from 1996 to 2015 including burglary, riot participation, drug possession, unlawful carrying of a weapon, and numerous drunk driving charges." Because the psychological evaluation had already been admitted into evidence without objection, the complained-of testimony was cumulative evidence, and any error related to its

9

admission was harmless.  *See State Office of Risk Mgmt. v. Allen*, 247 S.W.3d 797, 800 (Tex. App.—Dallas 2008, no pet.).  We overrule the father's first issue.

We affirm the trial court's order of termination.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


August 1, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.