**Opinion filed May 25, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00341-CV

_____

## IN THE INTEREST OF G.K., A CHILD

---

**On Appeal from the 50th District Court**

**Knox County, Texas**

**Trial Court Cause No. 10244**

---

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the parents to their then ten-year-old son, G.K. The mother filed this appeal; the father did not file an appeal. On appeal, the mother presents three issues in which she challenges the sufficiency of the evidence to support the trial court's findings that she endangered G.K. and that termination is in G.K.'s best interest. We affirm the order of the trial court.

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that Appellant had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (D) and (E). Specifically, the trial court found that Appellant had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being and that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the child.

In her appellate brief, Appellant challenges both the legal and factual sufficiency of the evidence. To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

## II. *Evidence Presented at Trial*

The record shows that the Department of Family and Protective Services became involved with G.K.'s parents as a result of their toxic and abusive relationship. G.K. was removed from the care of his parents based upon concerns of the parents' drug use and Appellant's attempt to have G.K.'s father killed. Appellant was arrested for that offense and remained incarcerated throughout the entirety of this case.

Appellant testified about the father's history of drug addiction. According to Appellant, the father's most recent drug of choice was methamphetamine, which caused him to be a danger to G.K. Appellant also admitted, however, that she had used methamphetamine with G.K.'s father.

With respect to the issue of domestic violence, the record shows that Appellant testified that G.K.'s father was both verbally and physically abusive to Appellant and verbally abusive to G.K. Appellant estimated that she was physically abused by the father several times a month and had suffered a fractured shoulder and a broken nose, among other injuries, as a result of the father's abuse.

On the other hand, G.K.'s father testified about multiple violent assaults committed by Appellant against the father. These included Appellant hitting the father in the lip with a DeWalt drill while the father was holding G.K., Appellant hitting the father on the forehead with a Maglite, Appellant breaking the father's nose, Appellant stabbing the father in the leg with a butcher knife, and Appellant pulling the trigger on an unloaded gun in an attempt to shoot the father. The incident that precipitated G.K.'s removal resulted in Appellant being convicted of the second-degree felony offense of conspiracy to commit murder—an offense to which Appellant pled guilty and for which she was sentenced to imprisonment for five years in the Correctional Institutions Division of the Texas Department of Criminal Justice. Appellant explained that because she was tired of being stalked and harassed by G.K.'s father, she set him up to be shot by Joel Melendez—whom G.K.'s father referred to as the "menace-to-society drug dealer" whom Appellant had permitted to stay at their house while G.K.'s father was out of town for work. After Melendez shot G.K.'s father (in the head and leg), Appellant drove by the scene and saw the father injured, but "walking." Appellant picked him up, but refused to take him to the hospital. Instead, she drove home, where G.K. was, and told the father to call an ambulance.

Appellant acknowledged that the domestic violence between her and G.K.'s father often occurred in G.K.'s presence. She agreed that such domestic violence would endanger a child's physical and emotional well-being, would be "traumatic" to the child, and would "affect [him] forever." Nonetheless, Appellant would like to

have G.K. returned to her care when she is released from prison, and toward that endeavor, she completed all of the services that she could while incarcerated. Appellant's release date from prison is June 29, 2026, though she becomes eligible for parole on December 29, 2023.

The permanency supervisor for this case testified that G.K. has some behavioral issues, that he attends counseling, and that domestic violence has a long-term emotional effect on children. She believed that termination of Appellant's parental rights would be in the best interest of G.K. even though Appellant and G.K. had a close relationship and G.K. loved his parents. G.K.'s father also believed that Appellant's parental rights should be terminated. The permanency supervisor indicated that G.K. had a strong opinion about what he wanted to happen in this case, and the trial court visited with G.K. "off the record" about his wishes.

G.K. had been placed with his maternal grandparents and was doing well in their care. The Department's plan was for the parental rights of both parents to be terminated and for G.K. to be adopted by his maternal grandparents.

### III. *Analysis*

#### A. *The evidence is sufficient to prove an endangering course of conduct.*

In the first and second issues, Appellant challenges the sufficiency of the evidence to prove grounds (D) and (E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct need not be directed at the child, nor does the child actually have

to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.* Domestic violence may also constitute evidence of endangerment. *C.J.O.*, 325 S.W.3d at 265.

Based upon evidence that showed the domestic violence that occurred in G.K.'s presence and the very violent nature of the relationship between Appellant and G.K.'s father, we conclude that the trial court could have found by clear and convincing evidence that Appellant had engaged in conduct or knowingly placed G.K. with persons who engaged in conduct that endangered the child's physical or emotional well-being. We hold that the evidence is legally and factually sufficient to uphold the trial court's finding as to Appellant under subsection (E). Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding as to subsection (E), we need not reach Appellant's first issue—her challenge to the finding under subsection (D). *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35; *see also* TEX. R. APP. P. 47.1. We overrule Appellant's second issue.

B. *The evidence is sufficient to support the best interest finding.*

In her third issue, Appellant challenges the sufficiency of the evidence to support the trial court's finding that termination of her parental rights would be in the best interest of G.K. Appellant asserts that the evidence was insufficient to overcome the presumption that it is in a child's best interest to be raised by a parent. She points out the heavy burden on the Department, the loving relationship that she and G.K. have, the numerous appropriate visits that she had with G.K. while this case was pending below, and the fact that she complied with her family service plan—as much as she could while incarcerated.

While the record does show that Appellant and G.K. had a close relationship, it also shows that she attempted to kill G.K.'s father, that she later attempted to have G.K.'s father killed by someone else, that she and G.K.'s father engaged in a long

and extremely violent relationship, that G.K. was sometimes present during his parents' altercations, that Appellant occasionally used methamphetamine, and that Appellant had been sentenced to five years in prison for conspiring to kill G.K.'s father. G.K. had been placed with Appellant's parents and was doing very well there, and the Department's plan was for these grandparents to adopt G.K. According to the testimony, G.K. had a strong preference regarding the outcome of this case. The record shows that the trial court spoke to G.K. in chambers regarding his preference; however, the substance of that conversation is not shown in the record.

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. Giving due deference to the trial court, we hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in G.K.'s best interest. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the child, which were known to the trial court but not to this court; the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of those involved; the plans for the child by the Department; Appellant's prior drug use; and the extreme, chronic nature of the domestic violence engaged in by Appellant, we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental rights is in the best interest of G.K. *See id.* We defer to the trial court's finding as to the child's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the finding as to best interest is not supported by clear and convincing evidence. We overrule Appellant's third issue.

IV. *This Court's Ruling*

We affirm the order of the trial court.

W. BRUCE WILLIAMS

JUSTICE

May 25, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.